UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

JOSEPH GRANDE,

                Plaintiff,

- against -

GRISTEDE'S FOOD'S, INC. and JOHN
CATSIMATIDIS,

                Defendants.
------------------------------------------------------X

OPINION AND ORDER

11 Civ. 777 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/7/11

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

        Joseph Grande, now proceeding *pro se*[1], brings this defamation action[2] against his former employer, Gristede's Foods, Inc. ("Gristede's" or the "Company") and Gristede's Chairman and CEO John Catsimatidis ("Catsimatidis"). Grande alleges that Catisimatidis and Gristedes gave a defamatory quote to the New York Post (the "Post") accusing Grande of attempted

---

[1]    Plaintiff's attorney formally withdrew as counsel on July 8, 2011. *See* Docket No. 16.

[2]    On April 8, 2011, plaintiff's second claim pursuant to N.Y. Labor Law § 740 was voluntary dismissed. *See* Docket No. 13. Therefore, this motion will only address the remaining claim of defamation.

extortion. Plaintiff seeks damages for distress, harm to his reputation, and harm to his professional, business and employment prospects.

Defendants now move to dismiss Grande's defamation claim pursuant to Federal Rule of Civil Procedure 12(b)(6) on the following grounds: (1) the defamatory statement did not allege criminal conduct; (2) the defamatory statement alleged only an intent to commit a crime; and (3) failure to prosecute. Defendants also seek attorneys' fees and costs pursuant to N.Y. Labor Law § 740(6).[3] Plaintiff did not submit opposition papers. For the reasons stated below, defendants' motions are denied.

## II. BACKGROUND[4]

Grande is a former employee of Gristede's, a chain of food stores in New York City. Beginning in 2008, Grande was employed as the Company's

---

[3] Labor Law § 740(6) provides that:

> A court, in its discretion, may also order that reasonable attorneys' fees and court costs and disbursements be awarded to an employer if the court determines that an action brought by an employee under this section was without basis in law or in fact.

[4] The following facts are drawn from the Amended Complaint ("Compl." or "Complaint") and are presumed to be true for purposes of this motion.

Controller, where he was in charge of "financial reporting, managing Gristedes' financial accounts, and dealing with the company's credit lines."[5]  While reviewing the Company's profit and loss accounts, which includes expense accounts, Grande noticed discrepancies in the Union Pension Fund account ("Pension Account").  The Pension Account made payments to the Company's unionized workforce pension fund.  Grande alleges that "in addition to the normal pension fund payments, regular payments were also being made from this account to various corporate officers and employees of Gristedes."[6]  Grande alleges that these payments were not being processed through the normal payment channels, and none of the regular payroll deductions required by law were deducted from these payments or otherwise made from the Pension Account.[7]

      Grande became "concerned and suspicious" of the improper payments and brought this to the attention of the Chief Financial Officer ("CFO"), Mark Kassner.[8]  Grande was advised that Kassner would review the matter and would, in turn, inform the Vice President and the assistant to the owner of Gristede's, Bob

---

    [5]    Compl. ¶ 7.

    [6]    *Id.* ¶ 9.

    [7]    *See id.*

    [8]    *See id.* ¶¶ 10-11.

Zorn.  Grande alleges that checks to certain employees from the Pension Account continued and that he repeatedly brought it to Kassner's attention.  Grande alleges that Kassner became more defensive, telling him: "I have no power . . . [President] Charlie [Criscuolo] runs the show."[9]  Grande alleges that when he approached Criscuolo about the Pension Account, Criscuolo responded by saying "you really don't want to ask about that account."[10]

### A.   The Annual Financial Audit

In September 2009, Gristede's had its annual financial audit, conducted by Russell Bedford, LLP (the "Auditors").[11]  When asked by the Auditors if he knew of any fraud, Grande mentioned the Pension Account.[12]  Upon further review by the Auditors, Kassner advised Grande that the "company was going to have to make a 'ledger entry' change 'reclassifying' the payments from the pension fund account as wages."[13]  Grande alleges that the reclassification was in name only, and that the Company did not issue amended W-2's, thus failing to

---

[9]    *Id.* ¶ 16.

[10]   *Id.* ¶ 18.

[11]   *See id.* ¶ 19.

[12]   *See id.*

[13]   *Id.* ¶¶ 20-21.

adhere to proper federal and State reporting requirements.[14] Grande alleges that Gristede's then stopped making payments to employees from the Pension Account but instead deducted the continuing payments "from other various 'expense' accounts."[15] When Grande learned of the continued wrongdoing, he again went to Kassner and objected.[16] To stop him from again reporting the misconduct to the Auditors in the upcoming August 2010 audit, Grande was moved into a "different 'corporate controller' role that did not review the expense accounts of Gristedes."[17] Shortly thereafter, Grande was fired and told it was because Gristede's wanted more leadership within the accounting department.[18] Grande claims he was never reprimanded, disciplined, or counseled on any performance issues.[19] Further, Grande alleges that "Gristedes has made fraudulent wage and compensation payments over the past 10 years, without reporting or paying the appropriate payroll taxes in excess of $3.2 million."[20]

---

[14]   *See id.* ¶ 22.

[15]   *Id.* ¶¶ 23-24.

[16]   *See id.* ¶ 26.

[17]   *Id.* ¶ 29.

[18]   *See id.* ¶ 31.

[19]   *See id.*

[20]   *Id.* ¶ 33.

**B.    Defamation**

On February 4, 2010, the day the original Complaint was filed, Catsimatidis gave an interview to the Post regarding Grande's allegations.[21] On February 5, 2011, the Post published the article, stating that "Catsimatidis also said Grande, 42, tried to extort $2 million from the company."[22] Grande alleges that this statement is false and defamatory.[23] Further, Grande alleges that this statement constitutes defamation *per se*, as it accuses him of serious criminal conduct, and that it is an attack on his character and integrity.[24] Grande alleges that the incident has caused him "extensive distress and damages, harm to his reputation, and harm to his professional, business and employment prospects."[25]

## III.   LEGAL STANDARDS

**A.    Motion to Dismiss**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court evaluates the sufficiency of the complaint under the

---

[21]   *See id.* ¶ 40.

[22]   *Id.* ¶ 42.

[23]   *See id.* ¶ 44.

[24]   *See id.* ¶¶ 48-49.

[25]   *Id.* ¶ 50.

"two-pronged approach" suggested by the Supreme Court in *Ashcroft v. Iqbal*.[26] First, a court "'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"[27] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[28] Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[29] To survive a motion to dismiss, the allegations in a complaint must meet a standard of "plausibility."[30] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[31] Plausibility "is not akin to a

---

[26] 556 U.S. —, 129 S.Ct. 1937, 1950 (2009).

[27] *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1950). *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

[28] *Iqbal*, 129 S.Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[29] *Id.* at 1950. *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[30] *Twombly*, 550 U.S. at 564.

[31] *Iqbal*, 129 S. Ct. at 1949 (quotation marks omitted).

probability requirement"; rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[32]

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[33] However, the court may also consider a document that is not incorporated by reference, "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[34]

### B. Defamation

Defamation is the invasion of an interest in reputation and good name.[35] Spoken defamatory words are generally considered slander; written defamatory words are considered libel.[36] "To state a claim for defamation under New York Law, the plaintiff must allege (1) a false statement about the plaintiff; (2)

---

[32] *Id.* (quotation marks omitted).

[33] *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[34] *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). *Accord Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006).

[35] *See Albert v. Loksen*, 239 F. 3d 256, 265 (2d Cir. 2001) (citing *Hogan v. Herald Co.*, 458 N.Y.S. 2d 836, 839 (4th Dep't 1982).

[36] *See id.*

published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation *per se* or caused 'special damages.'"[37] A court "need only determine that the contested statements 'are reasonably susceptible of defamatory connotation.' If any defamatory construction is possible, it is a question of fact for the jury whether the statements were understood as defamatory."[38]

### C. Failure to Prosecute

A district court has the authority under Rule 41(b) of the Federal Rules of Civil Procedure to dismiss an action "[f]or failure of the plaintiff to prosecute or to comply with . . . any order of the court."[39] However, dismissal on these grounds is a harsh remedy and is only be permitted in extreme situations.[40] "Furthermore, the Second Circuit has instructed courts to accord *pro se* plaintiffs particular

---

[37] *Gargiulo v. Forster & Garbus, Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) (*citing Dillon v. City of New York*, 704 N.Y.S. 2d 1, 5 (1st Dep't 1999)).

[38] *Albert*, 239 F. 3d at 267 (quoting *Purgess v. Sharrock*, 33 F.3d 134, 140 (2d Cir. 1994)).

[39] Fed. R. Civ. P. 41(b).

[40] *See LeSane v. Hall's Sec. Analyst, Inc.,* 239 F.3d 206, 209 (2d Cir. 2001).

leniency in procedural matters such as these."[41] "However, even *pro se* litigants must prosecute claims diligently, and dismissal with prejudice is warranted where the court gives warning."[42]

Courts apply a five-factor test in determining whether to dismiss an action for failure to prosecute:

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.[43]

No single factor is dispositive in determining the proper outcome. Instead, a court must weigh all five factors in determining whether dismissal is appropriate under Rule 41(b).[44]

---

[41] *Davis v. Rowe*, No. 10 Civ. 220, 2011 WL 3159133, at *1 (N.D.N.Y. July 26, 2011) (citing *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996)).

[42] *Jacobs v. County of Westchester*, No. 99 Civ. 4976, 2008 WL 199469, at *3 (S.D.N.Y. Jan. 22, 2008).

[43] *Lucas*, 84 F.3d at 535 (citing *Jackson v. City of New York*, 22 F.3d 71, 74-76 (2d Cir. 1994)).

[44] *See Davis*, 2011 WL 3159133, at *2. *Accord United States ex rel. Drake v. Norden Sys.*, 375 F.3d 248, 254 (2d Cir. 2004).

"There is no time frame specifically identifying the point at which a Rule 41(b) dismissal is warranted."[45] In general, failure to prosecute for durations between two and five months have been found to be insufficiently long to weigh in favor of dismissal, while durations of five to eight months are usually sufficient.[46] Factors such as the violation of court orders, failure to respond to motions, and failure to appear at scheduled conferences may be considered in determining what length of time is appropriate.[47]

## IV. DISCUSSION

### A. Defamation

Defendants argue that in order for Catsimatidis' comment to the Post to be considered defamatory, the statement must be one of fact, not opinion. Defendants maintain that the comment was a statement of opinion, and therefore did not contain an allegation of criminal conduct. Defendants argue that Catsimatidis's remarks to the Post were merely rhetoric in response to the instant litigation, which a reasonable reader would understand as such.[48] Additionally,

---

[45] *Feurtado v. City of New York*, 225 F.R.D. 474, 479 (S.D.N.Y. 2004).

[46] *See Davis*, 2011 WL 3159133, at *2.

[47] *See Feurtado*, 225 F.R.D. at 479.

[48] *See* Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Def. Mem.") at 5-6.

defendants argue that because the Post's article did not provide any details about the alleged extortion, Catsimatidis's statement should not be considered one of fact. However, the statement appears to be more specific than simple rhetoric, naming a dollar amount that Grande allegedly tried to extort. Defendants' suggestion that the two million dollars mentioned in the article refers to Grande's hoped for recovery in this action is not persuasive, especially because Grande's Complaint does not seek a specific amount in damages. Catsimatidis's comment can be interpreted in a number of different ways. For instance, one interpretation is that Grande tried to extort money from the Company in the past, and was fired as a result. A reasonable juror could find that such a statement was one of fact, not opinion. Therefore, defendants' motion to dismiss on the ground that the statement did not contain an allegation of criminal conduct is denied.

Next, defendants argue that the statement only alleged that Grande *intended* to commit extortion, not that he actually committed the crime. Catsimatidis's statement was that Grande "tried" to extort money. While defendants categorize this statement as one of "intent," it could also be construed as one of "attempt." "An attempt to commit extortion consists of an intent to commit the crime coupled with a material, overt act towards its commission."[49] In

---

[49] Am. Jur. 2d § 2 Attempted Extortion.

-12-

New York, both extortion and attempted extortion are considered criminal offenses.[50] Because the Post article could be interpreted as alleging a criminal offense, the statement may indeed be defamatory. This is a fact to be determined by a jury. Therefore, defendants' motion to dismiss for failure to state a defamation claim is denied.

### B. Failure to Prosecute

#### 1. Duration

The duration of the failure to prosecute requires a two part inquiry: (1) whether the failures were those of Grande and (2) whether they were of significant duration.[51] The failures to appear at the July 11, 2011 conference and to submit opposition papers to the instant motion are Grande's failures. However, it is uncertain whether Grande had notice that his counsel would not be appearing at the July 11, 2011 conference. At the time the conference was scheduled, Grande was represented by counsel. Grande's counsel formally withdrew only three days prior to the conference. Defendants were allegedly told by plaintiff's counsel that

---

[50] *See Minnelli v. Soumayah,* 839 N.Y.S. 2d 727, 728 (1st Dep't, 2007) (citing N.Y. Penal Law § 155.05[2][e]; § 110.00).

[51] *Jacobs*, 2008 WL 199469, at *4 (citing *Nita v. Connecticut Dep't of Envtl. Prot.*, 16 F.3d 482, 485 (2d Cir. 1994)).

-13-

Grande had been notified of the conference.[52]  However, it is unclear whether Grande was aware that he would no longer be represented by counsel at the conference.  Grande submitted a letter to the Court dated August 10, 2011, in which he states that he was under the impression that his counsel intended to appear at the July 11, 2011 conference.

        Next, defendants argue that the failure to prosecute began on April 26, 2011, when the Court directed Grande's counsel to withdraw because he was a necessary witness in this case.  However, this Court allowed Grande's counsel to delay withdrawal until Grande found new counsel.  Counsel officially withdrew on July 8, 2011.   If the duration began when Grande was first directed to find new counsel on April 26, 2011, then his failure to prosecute spans slightly more than three months.  This duration, coupled with his failure to secure new counsel or alternatively proceed *pro se*, his failure to appear at the July 11, 2011 conference, and his failure to submit opposition papers are noteworthy.  However, Grande was in contact with the Court during this time.  In his August 10, 2011 letter to the Court, Grande requested more time to file opposition papers, which this Court denied on August 15, 2011.  Because Grande appears to have a continued interest in prosecuting his case, the three-month delay is far too short to warrant the drastic

---

    [52]    *See* 7/29/11 Affirmation of Charles H. Kaplan in Support of Defendants' Motion to Dismiss at 2.

remedy of dismissal.

Alternatively, if the duration of Grande's failure to prosecute begins with his failure to attend the July 11 conference, then the length of time is significantly less and would not warrant dismissal. Because the duration of Grande's failure to prosecute is not significant, and Grande was in contact with the Court during this time, this factor does not weigh in favor of dismissal.

### 2. Notice to Plaintiff

Next, "[a] court's prior warning of dismissal, and subsequent inaction by plaintiff, weighs in favor of dismissal."[53] This Court never warned Grande that failure to attend the July 11, 2011 conference would result in dismissal. Nor has the Court warned Grande at any other time that his case was in jeopardy of being dismissed for failure to follow Court orders. Therefore, this factor does not weigh in favor of dismissal.

### 3. Prejudice to Defendant

A court must next determine whether the defendants are likely to be significantly prejudiced if the case is further delayed. There is no evidence that this delay has prejudiced the defendants in a manner that outweighs the interests of the plaintiff. There has been no discovery yet, and therefore the costs of litigating

---

[53] *Europacific Asset Mgmt. Corp. v. Tradescape, Corp.*, 233 F.R.D. 344, 353 (S.D.N.Y. 2005).

this matter have been minimal. Therefore, this factor does not weigh in favor of dismissal.

### 4. Inconvenience to the Court

While this Court moves cases along in an efficient and timely manner, permitting this action to remain on the docket does not sufficiently burden the Court to warrant dismissal at this time. Therefore, this factor does not weigh in favor of dismissal.

### 5. Lesser Sanctions

Finally, a court must consider lesser sanctions, but is not required to impose them if they are inappropriate or ineffective.[54] As plaintiff is currently proceeding *pro se* and has alluded to having trouble finding an affordable attorney, monetary sanctions are not appropriate here.

### 6. Balancing the Five Factors

Having considered the five factor analysis, dismissal of plaintiff's case for failure to prosecute is not appropriate action at this time. Therefore, defendants' motion to dismiss for failure to prosecute is denied without prejudice.

### C. Attorneys' Fees

---

[54] *See Jacobs,* 2008 WL 199469, at *5 (citing *Antonio v. Beckford*, No. 05 Civ. 2225, 2006 WL 2819598, at *4 (S.D.N.Y. Sept. 29, 2006)).

Defendants argue that they are entitled to recover attorneys' fees because Grande initially brought a claim pursuant to New York's Whistleblower Statute, which was later withdrawn voluntarily.[55] A court has discretion in awarding attorneys' fees when a purported Whistleblower claim is brought by an employee without basis in law or fact. Grande was relying on his former counsel when he filed his original Complaint.[56] Plaintiff voluntary dismissed the Whistleblower claim on April 7, 2011. As the Whistleblower claim only existed for approximately two months, it is highly unlikely that defendants incurred substantial legal fees in defending against it, especially given the lack of any discovery in this case, to date. Therefore, defendants' request for attorneys' fees, costs and disbursements is denied.

## V. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied, as is defendants' motion for attorneys' fees under N.Y. Labor Law § 740. The Clerk of the Court is directed to close this motion (Docket No. 20). A status conference is scheduled for October 20, 2011 at 2:30 p.m. If plaintiff fails to appear with or

---

[55] N.Y. Labor Law § 740.

[56] Plaintiff's Whistleblower claim was first asserted in the original Complaint, which was filed on February 4, 2011, and was re-asserted in the Amended Complaint, which was filed on February 23, 2011.

without counsel, defendants will be permitted to reinstate their motion to dismiss for failure to prosecute.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
October 7, 2011

## -Appearances-

**Plaintiff (Pro Se):**

Joseph Grande
59 Bennett Road
Matawan, NJ 07747

**For Defendants:**

William J. Brennan, Esq.
Charles H. Kaplan, Esq.
Sedgwick LLP
125 Broad Street, 39th Floor
New York, NY 10004
(212) 422-0202